UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD P. ELLISON, JR.,

      Plaintiff,

v.                                   Case No. 07-14795
                                   Honorable Patrick J. Duggan
DENISE BALINSKI, ELLA
BULLY-CUMMINGS, JOHN DOES 1-10,
and the CITY OF DETROIT,

      Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 26, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

      Plaintiff filed this lawsuit against Defendants in response to the June 12, 2007 search of his West Bloomfield, Michigan residence and his automobile and the seizure of his property. Defendants are City of Detroit Police Department Investigator Denise Balinski, the Department's Chief of Police Ella Bully-Cummings, John Does 1-10 (unknown City of Detroit Police Department officers, employees, officials, agents, or representatives), and the City of Detroit. Plaintiff is suing Investigator Balinski and Chief Bully-Cummings in their individual capacities. In his complaint, Plaintiff alleges the following counts:

(I) illegal search and seizure in violation of the Fourth and Fourteenth Amendment to the United States Constitution and Article 1, Section 11 of the Michigan Constitution against Investigator Balinski, John Does 1-10, and the City of Detroit;

(II) taking of property without due process of law in violation of the Fifth Amendment to the U.S. Constitution and Article 10, Section 2 of the Michigan Constitution against Investigator Balinski and John Does 1-10;

(III) tortious interference with a business relationship;

(IV) intentional infliction of emotional distress against Investigator Balinski;

(V) defamation and false light against Investigator Balinski, John Does 1-10, and the City of Detroit;

(VI) slander against Investigator Balinski;

(VII) invasion of privacy and trespass against Investigator Balinski and John Does 1-10; and,

(VIII) failure to supervise against Chief Bully-Cummings.

Presently before the Court is Defendants' motion for summary judgment with respect to Count I of Plaintiff's complaint, filed pursuant to Federal Rule of Civil Procedure 56(c).[1]  Plaintiff filed a response to the motion and the Court held a motion hearing on February 6, 2009.  For the reasons that follow, the Court denies Defendants' motion.

---

[1] In their motion, Defendants state that they are seeking summary judgment with respect to Count II of Plaintiff's complaint.  Defendants' motion, however, addresses only whether the search of Plaintiff's residence was lawful under the Fourth Amendment– i.e. the claim asserted only in Count I of Plaintiff's complaint.

## I.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## II.     Factual Background

In February 2006, Kimberly and Zotis Harris, husband and wife, signed a lease to rent a home at 13959 Grandville in Detroit, Michigan ("Grandville property"). Asia Thomas was identified as the owner of the property on the lease and when the lease was presented to the Harrises, it already contained Ms. Thomas' signature. A woman who identified herself as Asia Thomas was present at the initial meeting regarding the Harrises' rental of the Grandville property. Raynard Anderson also was present and he was introduced to the Harrises as the property manager.

Sometime in August or September 2006, Mrs. Harris was sitting on the front porch of the Grandville property when an unidentified man pulled up in a car and asked who lived at the house. When Mrs. Harris indicated that she did, the man responded: "How did you get in my family house? My family don't [sic] even live here. Ya'll [sic] some squatters." (Doc. 21 Ex. A at 13.)[2] The man then drove away. (*Id*.)

Mrs. Harris called her husband to tell him what happened and Mr. Harris, in response, called Mr. Anderson. (*Id*. at 14.) Mr. Harris asked Mr. Anderson for proof of Ms. Thomas' ownership of the Grandville property and indicated that the Harrises would not pay any more rent until they received such proof. (*Id*.) When Mr. Anderson failed to provide the Harrises with such proof, Mr. Harris went to the nearby Detroit police station

---

[2]Defendants did not submit exhibits in support of their pending motion but instead cite to exhibits they submitted in response to Plaintiff's previously filed motion for summary judgment. Thus the citations contained in this opinion and order are to Defendants' previously filed response (Doc. 21).

and filed a "fraud" report. As Mr. Harris explained during Mrs. Harris' deposition in this matter, the Harrises "felt [they] we[re] being defrauded out of [their] home." (*Id.* at 16, 23.)

According to Mrs. Harris, after her husband filed the report, she "constantly called [the police station] every day to try to get some help from the police station. [She] called several times a day. . . ." (*Id.* at 17.) Eventually, a lieutenant at the station gave Mrs. Harris the phone number for Investigator Balinski. (*Id.*)

In the meantime, the Harrises stopped paying their monthly rent for the Grandville property and Mr. Anderson filed a claim for non-payment of rent in state court. 36th District Court Judge O'Banner-Owens dismissed Mr. Anderson's claim on September 7, 2006, after Mr. Anderson failed to present proof of ownership of the property. (Doc. 21 Ex. B.) According to Mrs. Harris, Mr. Anderson and Plaintiff subsequently came to the Grandville property and threatened to evict the Harrises.

A second claim for non-payment of rent against the Harrises was filed in state court by Asia Thomas. (Doc. 21 Ex. B.) Mrs. Harris claims that when she went to court with respect to this action, the woman who appeared and claimed to be Ms. Thomas was not the same woman who identified herself as Asia Thomas at the initial meeting regarding the Harrises' rental of the Grandville property. 36th District Court Judge Humphries dismissed Ms. Thomas' action without prejudice on March 8, 2007, because the court was "not convinced by documents that Asia Thomas [is] the owner of [the] property." (*Id.*)

5

Mrs. Harris subsequently filed an action against Mr. Anderson in Small Claims Court, alleging that he had collected rent on property he did not own. On August 15, 2007, Mrs. Harris obtained a default judgment against Mr. Anderson in that action in the amount of $3,088.50. Mrs. Harris also filed a lawsuit in state court against Ms. Thomas and Ms. Thomas filed a counter-complaint against Mrs. Harris. Their claims were resolved by a stipulated order of dismissal, entered October 1, 2007, pursuant to which both parties' actions were dismissed with prejudice and Mrs. Harris agreed to vacate the Grandville property on or before October 1, 2007.

In the meantime, Investigator Balinski had been assigned to investigate the Harrises' police report and she began her investigation by attempting to identify the owner of the Grandville property. During her investigation, Investigator Balinski received an envelope from Mrs. Harris addressed to Ms. Thomas at the Grandville property. (Doc. 21 Ex. C at 15.) The first page of the documents bears a date of May 13, 2007, and is titled "Conditional Credit Approval." (*Id*.)

Investigator Balinski also obtained a deed from the Wayne County Register of Deeds reflecting the conveyance of the Grandville property from MyaBrooke Properties, LLC to Ms. Thomas for ninety thousand dollars ($90,000) in February 2005. (*Id*. at 18-23, 47.) Investigator Balinski also pulled a deed indicating that Kimberly Green had sold the Grandville property to MyaBrooke Properties for one dollar ($1.00) in September 2004. (*Id*. at 23-25.) Investigator Balinski subsequently determined that Plaintiff owned MyaBrooke Properties and that MyaBrooke Properties conveyed a second property

6

located at 19473 St. Louis to Ms. Thomas for ninety thousand dollars ($90,000) in May 2005, which it had purchased for one dollar ($1.00) in September 2004.  (*Id*. at 20, 22.)

At her deposition in this case, Investigator Balinski testified that she "thought something was wrong" and suspected "fraud" based on the fact that MyaBrooke Properties purchased the properties for one dollar and then sold them to Ms. Thomas for ninety thousand dollars.  (*Id*. at 22-23.)  Investigator Balinski further testified that despite obtaining a deed reflecting Ms. Thomas' ownership of the Grandville property, she still was not satisfied that Ms. Thomas in fact owned the property and she, therefore, contacted Plaintiff and requested that he provide her with the closing documents relating to the sale of the property.  (*Id*. at 28-31.)  According to Investigator Balinski, when Plaintiff failed to provide her with the requested paperwork and she was unable to locate Ms. Thomas, she decided to conduct a search of Plaintiff's residence in West Bloomfield, Michigan, as the Michigan Department of Labor and Economic Growth, Bureau of Commercial Services identified the address as the location of MyaBrooke Properties.  (*Id*. at 33.)

Investigator Balinski therefore prepared a search warrant for Plaintiff's residence and an affidavit in support of the warrant.  (Pl.'s Resp. Ex. A.)  In the search warrant, Investigator Balinski identifies the following items to be seized:

> Any and all computers, computer accessories, any software, any and all paperwork pertaining to Myabrooke Properties, LLC and or Ronald Ellison . . ., 13959 Grandville, any and all documents relating to the property at 19473 St. Louis, any and all documents regarding Asia Thomas, Raynard Anderson, or

7

>    indicia of any crime.

(*Id.*) According to Investigator Balinski, in order to obtain a warrant, the affidavit and warrant must be submitted to and signed by a prosecutor in the Wayne County Prosecutor's Office and a state court judge.[3] (Doc. 21 Ex. C at 37.) Wayne County Assistant Prosecutor Dennis Doherty subsequently signed the search warrant. (*Id.*) 36th District Court Judge Vanessa Jones Bradley subsequently signed the search warrant.

In her affidavit in support of the search warrant, Investigator Balinski describes the events leading up to the Harrises' filing of their police report (i.e. the preliminary meeting regarding their rental of the property, the visit by the man who claimed they were squatters, their request for evidence of ownership from Mr. Anderson, and the two lawsuits for non-payment of rent). Investigator Balinski then provides:

>    Writer in the meantime was still investigating this case in an attempt to find out who the owner of the property was. Writer contacted Mr. Ronald Ellison (President and owner of Myabrooke Properties) who sold the property (according to the Wayne County Register of Deeds) to Ms. Asia Thomas on 02/02/05 for the amount of $90,000. (The property had previously been Quit Claimed from Kimberly Ivory (Green) to Myabrooke Properties for the sum of $1.00, according to the Wayne County Register of Deeds). Writer has contacted Mr. Ellison many times by phone in an attempt to get paperwork on this property. Mr. Ellison has refused to cooperate in this investigation. His company sold the property yet he refused to show this writer any paperwork in regards to this purchase and sale.

---

[3] According to Wayne County Assistant Prosecutor Dennis Doherty, who signed the search warrant for Plaintiff's residence, Michigan law actually requires the signature of a prosecutor only for an arrest warrant, not a search warrant. (Doc. 21 Ex. F at 20-21.)

. . .

(Pl.'s Resp. Ex. A.)  Investigator Balinski then relays in her affidavit information about MyaBrooke Properties' sale of the St. Louis property to Ms. Thomas.  Investigator Balinski concludes by stating that she "has been unable to obtain any information regarding loans or title companies for either property" and that "seizure of the aforementioned items is necessary for the prosecution of this case."  (*Id*.)

On June 12, 2007, Investigator Balinski and unknown officers from the Detroit Police Department and the City of West Bloomfield Police Department executed the search warrant at Plaintiff's residence.  When they arrived at Plaintiff's West Bloomfield residence, no one was home.  The officers then entered the home through a rear patio door and began their search.  They seized numerous documents and Plaintiff's computer.  While the search was in progress, Plaintiff returned to his residence in his automobile and the officers then searched the automobile and seized a laptop computer contained therein.

### III.    Defendants' Motion and Plaintiff's Response

While it is not entirely clear to the Court what Defendants' arguments are in support of their motion for summary judgment, it appears they are arguing that Investigator Balinski is entitled to qualified immunity because "a reasonably competent officer would have concluded that a search warrant should issue in June of 2007 for the premises [sic] of Plaintiff . . ."  (Defs.' Br. in Supp. of Mot. at 10.)  Defendants argue that Investigator Balinski did not violate Plaintiff's Fourth Amendment rights because she had probable cause to suspect mortgage fraud and that evidence of the suspected crime

9

would be found within Plaintiff's home. (*See* Defs.' Br. in Supp. of Mot. at 13.)

Plaintiff responds that Investigator Balinski could not have possessed reasonable grounds to believe that contraband or evidence of mortgage fraud would be found at Plaintiff's residence when she applied for the search warrant of his residence. As Plaintiff points out, Investigator Balinski testified during her deposition in this case that, even as of the date of her deposition, she did not know whether there was mortgage fraud. (Pl.'s Resp. Ex. B at 59.) Plaintiff argues that because "she did not know whether a mortgage fraud occurred at all, she could not, in good faith, believe that there existed a fair probability that contraband or evidence of that crime would likely be found in [Plaintiff's] house." (Pl.'s Resp. Br. at 9.)

Plaintiff also responds that, although a search pursuant to a warrant generally will be upheld, Investigator Balinski cannot rely on Judge Bradley's issuance of the search warrant because her affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (*Id*. at 11, citing *Brown v. Illinois*, 411 U.S. 590, 610-11, 95 S. Ct. 2254, 2265 (1975) (Powell, J., concurring)). Plaintiff notes that Investigator Balinski made no mention of mortgage fraud in her affidavit and he points out that she specifically indicated that she had not been able to obtain information concerning loans for the Grandville or St. Louis properties. Plaintiff argues:

> An affidavit which does not allege that a mortgage fraud had occurred at all and states that the affiant has no information regarding a mortgage is so "lacking in indicia of probable

10

> cause" to believe that evidence of a mortgage fraud was likely to be found at [Plaintiff's] house "as to render official belief in its existence entirely unreasonable.

(*Id.*)

## IV. Analysis

The Sixth Circuit has explained the qualified immunity defense as follows:

> "A government official who performs discretionary functions is entitled to qualified immunity from civil suits for damages arising out of the performance of his official duties unless his alleged conduct violated clearly established constitutional rights of which a reasonable person would have known."

*Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995). To determine whether a defendant is entitled to qualified immunity, a court must engage in a two-step analysis. First, the court must determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001). Second, the court must decide whether the violation involved a clearly established constitutional right. *Id*. It is within the court's discretion to decide which step to analyze first. *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808 (Jan. 21, 2009). With respect to the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." *Id*. at 202, 121 S. Ct. at 2156.

Plaintiff maintains that Investigator Balinski violated his Fourth Amendment right to be free from unreasonable searches and seizures due to a lack of probable cause to support the issuance of a search warrant. "Probable cause for a search warrant exists if

11

'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). Stated differently, "[p]robable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

In her affidavit in support of the search warrant, Investigator Balinski did not identify what crime she believed had been committed (or by whom), although she did indicate that she was investigating the Harrises' "fraud complaint." (Pl.'s Resp. Ex. A.) Consistent with her deposition testimony (*see* Doc. 21 Ex. C at 46), Defendants argue that Investigator Balinski had probable cause to suspect mortgage fraud. Defendants further argue that Investigator Balinski had probable cause to believe that evidence of the crime would be found at Plaintiff's residence.

As Plaintiff argues, however, Investigator Balinski acknowledged during her deposition that even as of the date of her deposition she did not know whether there was mortgage fraud and that she "can't read mortgages." (Doc. 21 Ex. C at 59.) In fact, in her affidavit in support of the search warrant, Investigator Balinski provides that she "has been unable to obtain any information regarding loans" for the Grandville or St. Louis properties. (Pl.'s Resp. Ex. A.) Thus it does not appear that Investigator Balinski had

12

even determined that there were mortgages related to the properties, much less established probable cause to believe that fraud had been committed with respect to any mortgage. Moreover, the Court does not believe that Investigator Balinski's affidavit provides the required nexus between Plaintiff's residence and automobile and any crime that the officer believed might have been committed. For the same reasons, Investigator Balinski cannot rely on Judge Bradley's issuance of the search warrant to establish probable cause.

In deciding whether officers were entitled to rely on a judicially-secured search warrant for immunity in a § 1983 action, where the court also found the search warrant affidavit unsupported by probable cause, the Sixth Circuit provided:

> Although officers are entitled to rely on a judicially-secured warrant for immunity in a Section 1983 action claiming illegal search, if the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable, qualified immunity is not appropriate.

*Mills v. City of Barbourville*, 389 F.3d 568, 577 (6th Cir. 2004) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98 (1986)). The *Mills* court provided further:

> Under an "objective reasonableness" test, the officers "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."

*Id*. (quoting *Malley*, at 341, 106 S. Ct. at 1096).

For the reasons discussed above, this Court cannot conclude that any reasonably competent officer, armed with Investigator Balinski's knowledge, would have concluded

13

that the search warrant for Plaintiff's residence should issue. Further, Investigator Balinksi's affidavit was "so lacking in indicia of probable cause" that mortgage fraud had been committed with respect to the Grandville or St. Louis properties or that evidence of such fraud would be found at Plaintiff's residence that "official belief in the existence of probable cause [to search Plaintiff's residence] is unreasonable. The Court therefore concludes that Defendants are not entitled to qualified immunity.

## V.    Conclusion

In summary, the Court finds that Defendants fail to establish the absence of a genuine issue of material fact with respect Plaintiff's claim that Investigator Balinski violated his Fourth Amendment rights. The Court therefore holds that Defendants are not entitled to summary judgment with respect to Count I of Plaintiff's complaint.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **DENIED**.

                                                    s/PATRICK J. DUGGAN
                                                    UNITED STATES DISTRICT JUDGE

Copies to:
James C. Cobb, Jr.
Edward V. Keelean